MICHAEL CHARLES WILLIAMS *v.* STATE OF INDIANA.

[No. 374S51. Filed September 16, 1974.]

*Paul J. Giorgi*, of Merrillville, *Gerald N. Svetanoff*, of Gary, for appellant.

*Theodore L. Sendak*, Attorney General, *A. Frank Gleaves, III*, Deputy Attorney General, for appelee.

GIVAN, J.—This is an appeal from the denial of a belated motion to correct errors. The appellant was convicted of murder in the second degree on the 10th day of March, 1967. In November, 1973, he filed a petition for a belated motion to correct errors, which petition was granted. Following a hearing the trial court denied appellant's motion to correct errors. This appeal is taken from that denial.

The issues presented are: 1) Whether self-defense was shown, so as to preclude a verdict of guilty of second degree murder. 2) Whether at most the evidence would only support a verdict of guilty of manslaughter.

We answer both of these questions in the negative and affirm the trial court.

The record in this case shows the following:

On the afternoon of January 1, 1967, the appellant entered the apartment of Emma Morgan to use the telephone. At that time the deceased, Orville Edwards, was a guest in Mrs. Morgan's home. After using the telephone, the appellant left the Morgan apartment carrying a can of beer. Mrs. Morgan opened the door for the appellant and as he stepped outside, he turned and pointed a pistol at Mrs. Morgan. She told appellant if he shot her, it would be the last person he shot and closed the door. A few minutes later Orville Edwards told Mrs. Morgan he had to go "see about my fire." After Edwards left the apartment, she heard him say, "Hey buddy, I thought you went home" and "Hey, you down there! You're hiding down there, ain't you?" A few moments later Mrs. Morgan heard a shot. She looked out her window and saw the appellant standing in an entrance way with a pistol. She saw him fire a second shot from the pistol.

Mrs. Morgan left her apartment and found Orville Edwards lying on the floor at the bottom of the stairs.

Appellant's version of the shooting was that as he left Mrs. Morgan's apartment, Edwards followed him and attacked him with a straight razor, and in order to escape Edwards he went into a closet at the entrance of the building, and that when he realized he was trapped inside the closet with Edwards outside, he fired two shots through a crack in the closet door to frighten Edwards away. However, six witnesses, including Mrs. Morgan and investigating police officers, testified that they saw no weapon near Edwards' body following the shooting. The police officers testified that they searched Edwards' body and that he had no weapons.

It is true as argued by the appellant that when self-defense is claimed by the accused, the jury must look to the situation from the defendant's viewpoint. However, this does not mean that the jury is required to believe a defendant's testimony. See *Lytle* v. *State* (1968), 251 Ind. 413, 241 N.E.2d 366, 15 Ind. Dec. 721.

It is obvious from the record in this case that the jury was required to make a determination as to whether or not the appellant was telling the truth in his version of the shooting. The jury chose to disbelieve the appellant's statements concerning the use of a razor by Edwards, and the claim that appellant fired both shots from the inside of the closet. The jury chose to believe the testimony of Mrs. Morgan, who testified that she saw the appellant fire a shot while standing in the entranceway outside the closet.

This Court has repeatedly stated that it will not weigh the facts nor determine the credibility of the witnesses. *Lytle* v. *State, supra.*

Appellant next argues that the evidence was insufficient, even in the absence of self-defense, to prove the defendant guilty of second degree murder, and that as a matter of law he should have been found guilty of manslaughter. With this we cannot agree. Appellant acknowledges that malice and intent may be inferred from the use of a deadly weapon, citing *King* v. *State* (1968), 249 Ind. 699, 234 N.E.2d 465, 13 Ind. Dec. 338. However, appellant also cites *Miller* v. *State* (1962), 242 Ind. 678, 181 N.E.2d 633, for the proposition that the State must show that the accused fired at a vital part of a decedent's body in order to give rise to the inference of malice and intent. However, in the *Miller* case there was evidence that the injured party had a knife in his hand at the time of the altercation and that the accused fired a gun striking the injured party in the hand holding the knife. The Court held that the inference of malice was negated by these facts, especially in view of the additional fact that the accused was an expert marksman with a pistol, and that he claimed to have deliberately shot the injured person in the hand holding the knife. However, we find no application of the *Miller* case to the case at bar. In this case two shots were fired. One shot struck the decedent in the upper chest, causing almost instant death. Although appellant claims the decedent was attacking him with a

straight razor at the time, all evidence in the record except appellant's testimony indicates that no such weapon was on or near the person of the decedent.

We, therefore, hold the jury was justified in finding that the appellant deliberately shot the decedent in a vital part of his body.

The only evidence of any altercation between the parties was the testimony of the appellant. The testimony of other witnesses indicated there was no such altercation. We, therefore, hold that the jury was justified in finding the appellant guilty of second degree murder.

The trial court is, therefore, affirmed.

Arterburn, C.J., DeBruler, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 316 N.E.2d 354.